IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **GBX Associates, LLC,** | Case No. 1:22cv401 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **United States of America, et al.,** | MEMORANDUM OPINION & ORDER |
| **Defendants** | |

Currently pending is Plaintiff GBX Associates, LLC's Motion for Speedy Hearing and Expedited Declaratory Judgment. (Doc. No. 7.) Defendants United States of America, the United States Department of the Treasury, and the Internal Revenue Service filed a Brief in Opposition on March 22, 2022, to which Plaintiff responded on March 24, 2022. (Doc. Nos. 8, 10.) For the following reasons, Plaintiff's Motion is DENIED.

**I.   Background**

On March 11, 2022, Plaintiff GBX Associates, LLC (hereinafter "Plaintiff" or "GBX") filed a Verified Complaint for Injunctive and Declaratory Relief in this Court against Defendants United States of America, the United States Department of the Treasury, and the Internal Revenue Service (hereinafter referred to collectively as Defendants or "the United States".) (Doc. No. 1.) Therein, GBX alleges the following.

GBX is a real estate investment and development firm that focuses on the acquisition, preservation, and rehabilitation of historic buildings in urban centers. (*Id*. at ¶ 13.) GBX uses a variety of federal, state, and local tax incentives, including Historic Preservation Easements. (*Id*. at ¶¶ 14, 15.) GBX alleges that a Historic Preservation Easement is a "qualified real property interest"

pursuant to 26 U.S.C. § 170(h).  (*Id*. at ¶ 17.)  According to the Complaint, "the Internal Revenue Code allows a deduction for a qualified conservation contribution, which is a contribution of a qualified real property interest to a qualified organization exclusively for conservation purposes." (*Id*. at ¶ 18.)  To utilize this incentive to generate the capital necessary to acquire, preserve, and rehabilitate historic buildings, GBX establishes funds through which investors invest in real estate projects and receive, as part of their return on investment, allocations of deductions.  (*Id*. at ¶ 19.)

On December 23, 2016, the United States Department of the Treasury and the Internal Revenue Service ("IRS") released Notice 2017-10, entitled "Listing Notice- Syndicated Conservation Easement Transactions."  (*Id*. at ¶ 20.)  *See also* Doc. No. 1-1.  This Notice provides, in part, as follows:

> The Department of the Treasury (Treasury Department) and the Internal Revenue Service (IRS) are aware that some promoters are syndicating conservation easement transactions that purport to give investors the opportunity to obtain charitable contribution deductions in amounts that significantly exceed the amount invested. This notice alerts taxpayers and their representatives that the transaction described in section 2 of this notice is a tax avoidance transaction and identifies this transaction, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations (Regulations) and §§ 6111 and 6112 of the Internal Revenue Code (Code).  This notice also alerts persons involved with these transactions that certain responsibilities may arise from their involvement.

(Doc. No. 1-1 at p. 1.)  The designation of the transactions covered by the Notice as "listed transactions" imposes certain reporting and recordkeeping requirements on taxpayers who "participate"[1] in those transactions as well as on "material advisors." (Doc. No. 1 at ¶ 22.)  GBX alleges that the respective reporting requirements imposed by the Notice on "participants" and

---

[1] The Notice specifies that participants in the transaction "include, but are not limited to, investors, the pass-through entity (any tier, if multiple tiers are involved in the transaction), or any other person whose tax return reflects tax consequences or a tax strategy described" in the Notice.  (Doc. No. 1-1 at p. 5.)

"material advisors" are significant and that compliance with the same is burdensome.[2] (*Id*. at ¶¶ 24-34, 41-42.) GBX further alleges that the potential penalties for failure to comply with these reporting requirements are "extreme."[3] (*Id*. at ¶¶ 26, 27, 36, 37.) GBX claims that the United States issued Notice 2017-10 without first providing any notice to the public or soliciting comments. (*Id*. at ¶ 20.)

GBX is a material advisor with respect to Historic Preservation Easement transactions that the IRS allegedly considers substantially similar to the listed transactions described in Notice 2017-10. (*Id*. at ¶ 39.) GBX alleges that, "[w]hile [it] believes that the investment funds it forms and manages are distinguishable from the listed transaction described in [the Notice] and are not tax avoidance transactions, the penalties for non-compliance with Notice 2017-10 are so extreme that GBX works diligently to comply on a protective basis with all of the reporting and list maintenance requirements arising from the Notice." (*Id*. at ¶ 40.)

GBX asserts that it spends "significant time and money complying with the onerous requirements [that] Notice 2017-10 imposes on GBX as material advisor and on the funds and project partnerships it manages." (*Id*. at ¶ 41.) GBX also spends significant time and money providing

---

[2] Specifically, GBX alleges that "participants" are required by the Notice to submit IRS Form 8886 both as part of the taxpayer's income tax return and separately to the IRS Office of Tax Shelter Analysis. (Doc. No. 1 at ¶ 24.) The instructions to Form 8886 estimate that, on average, it takes 21 hours and 31 minutes to complete. (*Id*. at ¶ 25.) With regard to "material advisors," GBX alleges that the Notice requires material advisors to submit IRS Form 8918 to the IRS Office of Tax Shelter Analysis by the last day of the month that follows the end of the calendar quarter in which the advisor becomes a material advisor. (*Id*. at ¶ 29.) The instructions to Form 8918 estimate that, on average, it takes 14 hours and 31 minutes to complete. (*Id*. at ¶ 30.) In addition, each material advisor is required by the Notice to maintain a detailed list (described in para. 34 of the Complaint) and make it available to the IRS upon request. (*Id*. at ¶¶ 34, 35.)

[3] Each taxpayer required by Notice 2017-10 to file Form 8886 who fails to do so faces a civil penalty of up to $100,000 or $200,000, depending on whether they are natural persons. (*Id*. at ¶ 26) (citing 26 U.S.C. § 6707A(b)(2)(A)). Each material advisor required by the Notice to file Form 8918 who fails to do so faces a civil penalty of the greater of $200,000 or 50% of the gross income derived by such person with respect to aid, assistance, or advice which is provided with respect to the listed transaction, increased to 75% in the case of intentional failure. (*Id*. at ¶ 32) (citing 26 U.S.C. § 6707(b)). Any person required by Notice 2017-10 to file Form 8886 or Form 8918 who "willfully" fails to do so also faces criminal sanctions of fines and up to one year in prison for each unfiled form. (*Id*. at ¶¶ 27, 33) (citing 26 U.S.C. § 7203.)

information regarding the reporting and list maintenance requirements to other material advisors, the investors who participate in the funds, and tax professionals who work with those material advisors and investors. (*Id*. at ¶ 42.) Specifically, GBX estimates that its employees spend 150 to 200 hours each year on compliance with Notice 2017-10. (*Id*. at ¶ 43.) GBX also states that it pays outside advisors for guidance on compliance with the Notice and review of the Forms 8886 and 8918 that must be filed with the IRS. (*Id*. at ¶ 44.)

In its sole claim in the Verified Complaint, GBX asserts that Defendants violated the Administrative Procedure Act ("APA") when the IRS issued Notice 2017-10 without first providing notice and an opportunity for public comment. (*Id*. at ¶¶ 47-64.) GBX alleges that Notice 2017-10 constitutes a "substantive" or "legislative-type" rule that is subject to the APA's notice and comment procedures as a matter of law. (*Id*. at ¶ 57) (citing 5 U.S.C. § 553). GBX alleges that "Notice 2017-10 is unlawful because the IRS and Treasury failed to comply with the notice-and-comment procedures and there is no applicable exception to those requirements." (*Id*. at ¶ 63.) GBX further alleges that compliance with the Notice "has and will continue to injure Plaintiff, subjecting it to onerous reporting and recordkeeping requirements as well as reputational harm." (*Id*. at ¶ 64.)

GBX seeks an Order (1) declaring that Notice 2017-10 is unlawful and setting it aside; (2) permanently enjoining enforcement of Notice 2017-10; and (3) awarding attorney's fees and costs. (Doc. No. 1 at p. 10.)

Shortly after filing its Verified Complaint, on March 21, 2022, GBX filed a Motion for Speedy Hearing and Expedited Declaratory Judgment, in which it asks the Court to "enter a scheduling order that allows the court to decide this case and grant the relief requested in Plaintiff's Verified Complaint

by June 15, 2022." (Doc. No. 7 at p. 6.) In particular, GBX asks the Court to set expedited deadlines for the filing of an Answer, dispositive motions, and "any hearing the court deems necessary." (*Id*.)

The docket reflects that service was returned executed on the United States Attorney's Office on March 21, 2022, and on the United States Attorney General on March 23, 2022. (Doc. No. 9.) Defendants filed a Brief in Opposition on March 22, 2022, to which GBX replied on March 24, 2022. (Doc. Nos. 8, 10.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 57 grants district courts the authority to "order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57. Beyond this general statement authorizing district courts to permit a speedy hearing, Rule 57 does not provide specific guidance as to the circumstances in which an expedited proceeding will be appropriate. *See County of Butler v. Wolf,* 2020 WL 2769105 at * 2 (W.D. Pa. May 28, 2020). District courts interpreting this Rule have held that a speedy hearing is appropriate when it will "terminate the controversy or at least substantially narrow the issues." *Allergan, Inc. v. Valeant Pharmaceuticals Intern., Inc*., 2014 WL 4181457 at * 3 (C.D. Cal. Aug. 21, 2014). *See also GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 3345456 at * 6 (N.D. Cal. June 6, 2016) (same); *County of Butler*, 2020 WL 2769105 at * 2 (noting that courts have considered whether expediting determination of the requested declaratory judgment "will streamline and narrow issues for discovery and trial, even if it will not entirely resolve the controversy"); *Walsh/Granite JV v. HDR Engineering, Inc*., 2018 WL 10228381 at * 1 (W.D. Pa. Jan. 3, 2018) (same).

Expedited proceedings have also been found to be appropriate "where the determination is largely one of law, and factual issues (while expedited discovery is permitted and frequently granted)

are not predominant." *County of Butler*, 2020 WL 2769105 at * 2.  *See also Hubay v. Mendez,* 500 F.Supp.3d 438, 443 (W.D. Pa. 2020) (same); *GEC US 1 LLC*, 2016 WL 3345456 at * 6 (in evaluating motion for speedy hearing under Rule 57, evaluating "whether the facts are relatively undisputed"); *Allergan, Inc.*, 2014 WL 4181457 at * 3 (same).  Finally, courts have found that "expedited proceedings are especially warranted where there are imminent or ongoing violations of important rights" or the plaintiff otherwise shows "the need for urgency."  *See County of Butler*, 2020 WL 2769105 at * 2; *GEC US 1 LLC*, 2016 WL 3345456 at * 6; *Allergan, Inc.*, 2014 WL 4181457 at * 3.

"[D]istrict courts have universally held that they have broad discretion in deciding whether expedited proceedings are warranted."  *County of Butler*, 2020 WL 2769105 at * 2.  *See also Bright Rock Energy, LLC v. CNOOC Energy USA, LLC*, 2021 WL 2176476 at * 1 (D. Wyo. Apr. 16, 2021); *Walsh/Granite JV*, 2018 WL 10228381 at * 1; *GEC US 1 LLC*, 2016 WL 3345456 at * 6; *Allergan, Inc.*, 2014 WL 4181457 at * 3 (C.D. Cal. Aug. 21, 2014); *Tri-State Generation and Transmission Assoc., Inc. v. BNSF Railway Co.*, 2008 WL 2465407 at * 7 (D. Ariz. June 17, 2008).

**III.    Analysis**

In its Motion, GBX argues that a speedy hearing and expedited declaratory judgment is warranted because "Plaintiff will otherwise be required to expend significant time and money complying with an unlawful rule" promulgated by the IRS in violation of the APA, 5 U.S.C. § 551, *et seq*.  (Doc. No. 7 at p. 1.)  GBX asserts that the instant matter involves "one legal issue: the invalidity of Notice 2017-10 because the IRS did not follow the notice-and-comment procedures required by the APA."  (*Id*. at p. 5.)  GBX argues that resolution of this legal issue involves no disputed facts since "there should be no dispute" that the IRS did not follow the APA's notice and comment requirements in promulgating the Notice.  (*Id*.)  GBX further asserts that the determination

of this central legal issue should be relatively straightforward in light of the Sixth Circuit's recent decision of *Mann Construction, Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022), in which that court set aside an allegedly similar Notice because the IRS had failed to follow the APA's notice and comment procedures. (*Id*. at pp. 2, 5.)

Lastly, GBX argues that this matter "requires urgent attention" because it will suffer irreparable harm if Notice 2017-10 is not set aside by June 15, 2022, the date by which GBX will need to begin preparing protective Forms 8886 and related state tax filings. (*Id*. at p. 4.) To avoid the time and expense associated with those Forms, GBX asks the Court to set "an expedited deadline for Defendants to file an Answer, an expedited schedule for briefing, and, if necessary, a speedy hearing that will allow the court to enter a decision in this case by June 15, 2022." (*Id*. at p. 3.)

The United States argues that GBX's Motion should be denied because "it is far too early to force a scheduling order, let alone the dramatically shortened one unilaterally offered by plaintiff." (Doc. No. 8 at p. 1.) The United States maintains that it is not appropriate to use Rule 57 to shorten the deadline for filing a responsive pleading, particularly where it is not clear that the United States has yet been properly served. (*Id*. at p. 2-3.) The United States asserts that GBX's request for an expedited schedule should be denied because there may be factual issues that require discovery prior to dispositive motions, including such issues as standing and the potential for "disruptive consequences" in issuing a broad injunction in this case. (*Id*. at p. 4.) The United States argues that the Sixth Circuit's decision in *Mann* may not be as determinative as GBX suggests given that *Mann* (1) involved a different IRS notice, (2) was a tax refund suit seeking a money judgment rather than declaratory relief, and (3) "is not final and may still be appealed further." (*Id*. at pp. 4-5.) Finally, the United States argues that GBX's request for injunctive relief does not fall within the scope of a

declaratory judgment action and cannot be determined on an expedited basis under Rule 57. (*Id*. at pp. 5-6.)

For the following reasons, the Court denies GBX's request for a speedy hearing and expedited briefing schedule under Rule 57. GBX's Motion is premature. The United States has not yet filed a responsive pleading and the time to do so has not yet expired. Even assuming *arguendo* that service was perfected as of March 21, 2022,[4] the United States has sixty (60) days to file a responsive pleading under Fed. R. Civ. P. 12(a)(2), i.e., until May 20, 2022. Here, GBX seeks to cut this time in half, forcing the United States to evaluate the case and file a responsive pleading by April 15, 2022. (Doc. No. 7 at p. 6.) The Court is not persuaded that it would be appropriate to so dramatically curtail the United States' opportunity to file a response to the Verified Complaint. *See Perry v. Correct Care Solutions, LLC*, 2017 WL 11519168 at * 3 (E.D. Va. June 2, 2017) (denying motion for speedy hearing under Rule 57 as premature where defendant had not yet been served or filed a responsive pleading); *Gardner v. Newsom*, 2020 WL 4808696 (E.D. Cal. July 10, 2020), *report and recommendation adopted* 2020 WL 4795290 (E.D. Cal. Aug. 18, 2020) (same). *See also* 10 Fed. Proc. L. Ed. § 23:56 (noting that "[t]he need for a speedy hearing [under Rule 57] does not permit the court to shorten the time for a responsive pleading by the government").

Additionally, the Court is not convinced, at this time, that no discovery of any kind will be necessary because "the only relevant fact" is that the IRS did not follow the APA's notice and

---

[4] As noted *supra*, the docket reflects that service was returned executed on the United States Attorney's Office on March 21, 2022 and on the Attorney General's Office on March 23, 2022. However, service has not yet been returned executed on the Department of the Treasury. *See* Fed. R. Civ. P. 4(i)(1) (providing that "[t]o serve the United States, a party must: (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought . . . ; (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; **and** (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.") (emphasis added).

8

comment procedures in promulgating Notice 2017-10. GBX's own Complaint suggests that it may not, in fact, be subject to this Notice because it "believes that the investment funds it forms and manages are distinguishable from the listed transaction described in Notice 2017-10 and are not tax avoidance transactions." (Doc. No. 1 at ¶ 40.) As the United States notes, this suggests a potential standing issue that might require the need for discovery. The Court is simply not comfortable deciding, at this very early stage of the proceedings and based solely on the allegations in the Verified Complaint, that the United States should be entirely prevented from conducting any discovery in this action.[5] *See County of Butler*, 2020 WL 2769105 at * 5 ("[T]he entry of a declaratory judgment is a complete and final order . . . As such, the parties are entitled to take the discovery and to create the record needed to support their claims and defenses.").

Finally, the Court rejects GBX's argument that this matter requires "urgent attention" and should be accelerated over the other cases that are currently pending on this Court's busy docket. While the Sixth Circuit only recently issued its decision in *Mann* on March 3, 2022, GBX does not sufficiently explain why it could not have raised a challenge to Notice 2017-10 prior to that decision. According to the Complaint, the Notice was promulgated over five years ago, on December 23, 2016. GBX does not explain why it could not have challenged that Notice soon after its release. Just as the plaintiffs in *Mann* challenged an IRS Notice prior to the issuance of favorable authority from the Sixth Circuit, so too could GBX have challenged Notice 2017-10 at any time since its release in

---

[5] For similar reasons, the Court finds that, at this time, it is not clear that a speedy hearing would necessarily terminate the controversy or substantially narrow the issues. As noted above, there may be a threshold issue of whether GBX has standing to contest Notice 2017-10 in the first instance. Moreover, it is undisputed that the IRS Notice at issue in *Mann* is different than Notice 2017-10 and, further, that the plaintiffs in *Mann* did not seek the broad declaratory and/or injunctive relief that is sought herein. Further, even if the Court were to ultimately find that *Mann* dictated a finding that the IRS's promulgation of the Notice violated the APA's notice and comment procedures, there may be factual and legal issues regarding the appropriate remedy for such a violation.

9

December 2016. Instead, GBX waited to file suit until three months before it was going to be required to expend significant time and money complying with the Notice. Under these circumstances, and in the exercise of its discretion, the Court rejects GBX's argument that its need is so urgent that the United States should be deprived of a full opportunity to evaluate and respond to the Complaint and to engage in discovery if and as necessary. Nor is the Court persuaded, under the circumstances presented, that this matter should take precedence over the other litigants that are presently awaiting decisions from this Court.[6]

Accordingly, and for all the reasons set forth above, GBX's Motion is denied.

## IV. Conclusion

Plaintiff GBX's Motion for Speedy Hearing and Expedited Declaratory Judgment (Doc. No. 7) is DENIED. After Defendants have filed their Answer, the Court will conduct a Case Management Conference, at which time it will consider an appropriate discovery and briefing schedule in this matter.

**IT IS SO ORDERED.**

Date: April 5, 2022

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

---

[6] In its Reply Brief, GBX suggests, for the first time, that it could have moved for a preliminary injunction under Fed. R. Civ. P. 65 and "[t]his court could achieve the same schedule requested by Plaintiff by setting an expedited preliminary injunction hearing, advancing the trial on the merits, and consolidating it with the hearing under Fed. R. Civ. P. 65(b)." (Doc. No. 10 at pp. 1-2.) The Court will not consider this argument as it was raised for the first time in a reply brief, thus depriving the United States of the opportunity to respond. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (explaining that "reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration") (emphasis in original) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.,* 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.,* 436 F.3d 662, 676 (6th Cir. 2006) (stating that "[i]t is impermissible to mention an issue for the first time in a reply brief because the [opponent] then has no opportunity to respond") (quoting *Knighten v. Commissioner*, 702 F.2d 59, 60 n. 1 (5th Cir. 1983)). Moreover, while GBX makes passing reference to Rule 65 in its Reply Brief, it fails to recite any of the relevant factors under that Rule or apply them to the instant case.