## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**GBX Associates, LLC,**

       **Plaintiff,**

 **-vs-**

**United States of America, et al.,**

       **Defendants**

**Case No.  1:22cv401**


**JUDGE PAMELA A. BARKER**


**MEMORANDUM OPINION & ORDER**

   Currently pending are the cross Motions for Summary Judgment filed by Plaintiff GBX Associates, LLC and Defendants United States of America, the United States Department of the Treasury, and the Internal Revenue Service.  (Doc. Nos. 17, 18.)  Plaintiff GBX Associates, LLC filed a combined Response in Opposition to Defendants' Motion for Summary Judgment and Reply in support of its own Motion for Summary Judgment on July 1, 2022.  (Doc. No. 19.)  Defendants filed a Reply in Support of their Motion for Summary Judgment on July 8, 2022.  (Doc. No. 20.)

   For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED and Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED, as set forth herein.

## I. Background

### A. Facts

   The material facts are not in dispute.[1]  Plaintiff GBX Associates, LLC ("Plaintiff" or "GBX") is a real estate investment and development firm that focuses on the acquisition, preservation, and

---

[1] As discussed in more detail *infra,* the remaining issues in this matter are purely legal.  The parties chose not to engage in discovery and do not contest the material facts relating to the IRS Notice at issue herein.  The undisputed facts set forth

rehabilitation of historic buildings in urban centers.  (Doc. No. 1 at ¶ 13.)  GBX uses a variety of federal, state, and local tax incentives, including Historic Preservation Easements.  (*Id.* at ¶¶ 14, 15.) According to GBX, a Historic Preservation Easement is a "qualified real property interest" pursuant to 26 U.S.C. § 170(h).  (*Id.* at ¶ 17.)  The Internal Revenue Code allows a deduction for a qualified conservation contribution, which is a contribution of a "qualified real property interest" to a qualified organization exclusively for conservation purposes.  *See* Doc. No. 1-1 at p. 1 (citing 26 U.S.C. §§ 170(f)(3)(B)(iii), 170(h)(1) through (5)).  To utilize this incentive to generate the capital necessary to acquire, preserve, and rehabilitate historic buildings, GBX establishes funds through which investors invest in real estate projects and receive, as part of their return on investment, allocations of deductions.  (Doc. No. 1 at ¶ 19.)

On December 23, 2016, the United States Department of the Treasury and the Internal Revenue Service ("IRS") released Notice 2017-10, entitled "Listing Notice- Syndicated Conservation Easement Transactions."  *See* Doc. No. 1-1.  This Notice provides, in part, as follows:

> The Department of the Treasury (Treasury Department) and the Internal Revenue Service (IRS) are aware that some promoters are syndicating conservation easement transactions that purport to give investors the opportunity to obtain charitable contribution deductions in amounts that significantly exceed the amount invested. This notice alerts taxpayers and their representatives that the transaction described in section 2 of this notice is a tax avoidance transaction and identifies this transaction, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations (Regulations) and §§ 6111 and 6112 of the Internal Revenue Code (Code).  This notice also alerts persons involved with these transactions that certain responsibilities may arise from their involvement.

(Doc. No. 1-1 at p. 1.)  The designation of the transactions covered by the Notice as "listed transactions" imposes certain reporting and recordkeeping requirements on taxpayers who

---

in this decision, therefore, are taken from the Verified Complaint and the attachments thereto, including IRS Notice 2017-10.  *See* Doc. Nos 1, 1-1.

"participate" in those transactions as well as on "material advisors." [2]  (*Id.* at p. 4-5.)  The Notice advises that participants and material advisors that fail to comply with these reporting and recordkeeping requirements may be subject to penalties under 26 U.S.C. §§ 6707, 6707A, 6708. [3]  (*Id.* at p. 6.)  It is undisputed that the United States issued Notice 2017-10 without first providing any notice to the public or soliciting comments.  *See* Doc. No. 15 at ¶ 20; Doc. No. 15 at ¶ 20.

GBX is a material advisor with respect to Historic Preservation Easement transactions that the IRS allegedly considers substantially similar to the listed transactions described in Notice 2017-10.  (Doc. No. 1 at ¶ 39.)  Although it believes that the investment funds it forms and manages are distinguishable from the listed transaction described in Notice 2017-10, GBX works to comply on a protective basis with the reporting and list maintenance requirements arising from the Notice.  (*Id.* at ¶ 40.)  Specifically, GBX asserts (and Defendants do not dispute for purposes of the instant Motions) that GBX spends "significant time and money" complying with the record-keeping and reporting requirements that Notice 2017-10 imposes on GBX as a material advisor and on the funds and project

---

[2] "Participants" are required by the Notice to submit IRS Form 8886 both as part of the taxpayer's income tax return and separately to the IRS Office of Tax Shelter Analysis.  (Doc. No. 1-1 at pp. 4-5.)  *See also* 26 C.F.R. § 1.6011-4(d).  The instructions to Form 8886 indicate that "[t]he time needed to complete and file this form will vary depending on the individual circumstances" but estimate that, on average, it takes a total of 21 hours and 31 minutes to complete.  *See* IRS Form 8886 at p. 7.  The Notice also requires material advisors to submit IRS Form 8918 to the IRS Office of Tax Shelter Analysis by the last day of the month that follows the end of the calendar quarter in which the advisor becomes a material advisor.  (Doc. No. 1-1 at pp. 4-5.)  *See also* 26 C.F.R. § 301.6111-3(d).  The instructions to Form 8918 estimate that, on average, it takes a total of 14 hours and 31 minutes to complete.  *See* IRS Form 8918 at p. 6.  In addition, each material advisor is required by the Notice to maintain a detailed list and make it available to the IRS upon request.  *See* 26 C.F.R. § 301.6112-1.

[3] Each taxpayer required by Notice 2017-10 to file Form 8886 who fails to do so faces penalties under 26 U.S.C. § 6707(A), including a civil penalty of up to $100,000 or $200,000, depending on whether they are natural persons.  (Doc. No. 1-1 at p. 6.)  Each material advisor required by the Notice to file Form 8918 who fails to do so faces civil penalties under § 6707, including the greater of $200,000 or 50% of the gross income derived by such person with respect to aid, assistance, or advice which is provided with respect to the listed transaction, increased to 75% in the case of intentional failure.  (*Id.*)  Any person required by Notice 2017-10 to file Form 8886 or Form 8918 who "willfully" fails to do so may face criminal sanctions of fines and up to one year in prison for each unfiled form.  26 U.S.C. § 7203.

partnerships it manages. (*Id.* at ¶ 41.) GBX also asserts (and Defendants do not dispute for purposes of the instant Motion) that it spends significant time and money providing information regarding the reporting and list maintenance requirements to other material advisors, the investors who participate in the funds, and tax professionals who work with those material advisors and investors. (*Id.* at ¶ 42.)

### B. Procedural History

On March 11, 2022, GBX filed a Verified Complaint for Injunctive and Declaratory Relief in this Court against Defendants United States of America, the United States Department of the Treasury, and the Internal Revenue Service. (Doc. No. 1.) In its sole claim, GBX asserts that Defendants violated the Administrative Procedure Act ("APA") when the IRS issued Notice 2017-10 without first providing notice and an opportunity for public comment. (*Id.* at ¶¶ 47-64.) GBX alleges that Notice 2017-10 constitutes a "substantive" or "legislative-type" rule that is subject to the APA's notice and comment procedures as a matter of law. (*Id.* at ¶ 57) (citing 5 U.S.C. § 553). GBX alleges that "Notice 2017-10 is unlawful because the IRS and Treasury failed to comply with the notice-and-comment procedures and there is no applicable exception to those requirements." (*Id.* at ¶ 63.)

GBX alleges that it is likely to succeed in challenging the lawfulness of Notice 2017-10 under the APA in light of the Sixth Circuit's recent decision in *Mann Construction, Inc. v. United States*, 27 F.4th 1138 (6th Cir. March 3, 2022), which upheld an APA challenge to a similar IRS listing notice.[4] (*Id.* at ¶ 6.) GBX further alleges that compliance with the Notice "has and will continue to

---

[4] In *Mann*, the Sixth Circuit found that an IRS Notice identifying certain cash-value life insurance policies connected to employee benefit plans as "listed transactions" constituted a "legislative rule" and was, therefore, subject to the APA's notice and comment procedures. *Mann*, 27 F. 4th at 1143-1144. Because the IRS failed to follow those procedures, the Sixth Circuit found that the Notice at issue was unlawful under the APA and "set it aside" pursuant to APA § 706(2). *Id.* at 1148. The case is currently before the district court on plaintiff's motion to enforce the Sixth Circuit's mandate and

injure Plaintiff, subjecting it to onerous reporting and recordkeeping requirements as well as reputational harm." (*Id*. at ¶ 64.) GBX seeks an Order (1) declaring that Notice 2017-10 is unlawful and setting it aside; (2) permanently enjoining enforcement of Notice 2017-10; and (3) awarding attorney's fees and costs. (Doc. No. 1 at p. 10.)

Shortly after filing its Verified Complaint, on March 21, 2022, GBX filed a Motion for Speedy Hearing and Expedited Declaratory Judgment, in which it asked the Court to "enter a scheduling order that allows the court to decide this case and grant the relief requested in Plaintiff's Verified Complaint by June 15, 2022." (Doc. No. 7 at p. 6.) Defendants opposed the Motion. (Doc. No. 8.) On April 5, 2022, the Court issued a Memorandum Opinion & Order denying the Motion. (Doc. No. 12.)

Defendants filed their Answer on May 20, 2022. (Doc. No. 15.) Notably, therein, Defendants admit that "*Mann Construction* is now controlling law within the Sixth Circuit and … the analysis in that decision … appears to apply with equal force to IRS Notice 2017-10." (*Id*. at p. 3.) Defendants "request that the Court enter a final judgment that IRS Notice 2017-10 is declared unlawful as to plaintiff GBX only and setting IRS Notice 2017-10 aside as to plaintiff GBX only, with the understandings that (1) this relief does not apply to any parties not presently before the Court, and (2) the United States retains the right to argue that this is not the correct result in cases outside the Sixth Circuit." (*Id*. at p. 16.) Defendants further state that "[b]efore the Court enters a judgment providing for any relief that exceeds, in nature or in scope, the relief that is described in the preceding sentence,

---

the government's brief in opposition thereto. Therein, the parties have briefed the issue of whether the notice at issue in that case should be vacated as to plaintiff only or vacated on a nationwide basis pursuant to § 706(2). *See Mann Construction, Inc. v. United States*, Case No. 1:20CV11307 (E.D. Mich.) (Doc. Nos. 53, 59.) As of the date of this Opinion, the district court has not yet ruled on plaintiff's motion.

the United States requests leave to file a brief explaining its position that the nature and scope of relief available in this action should be so limited." (*Id.*)

The Court conducted a telephonic status conference with counsel on May 23, 2022, during which counsel for GBX indicated that GBX did not agree to the limited scope of relief proposed by Defendants in their Answer. *See* Minute Order dated May 23, 2022. The Court ordered the parties to meet and confer to determine whether they could reach agreement regarding the scope of relief in a proposed final judgment and order of dismissal. (*Id*.)

On May 27, 2022, the parties advised the Court that they were unable to reach agreement regarding the scope of relief in a proposed final judgment and order of dismissal. *See* Minute Order dated May 31, 2022. The parties agreed that discovery was not necessary and requested that the Court allow the parties to file briefs regarding the nature and scope of the relief available under the APA. *Id.* The Court set a briefing schedule. *Id.*

GBX thereafter filed a Motion for Summary Judgment on June 10, 2022. (Doc. No. 17.) Defendants filed a combined Cross Motion for Summary Judgment and Response in Opposition to GBX's Motion for Summary Judgment on June 24, 2022. (Doc. No. 18.) GBX filed a combined Brief in Opposition to Defendants' Motion for Summary Judgment and Reply in support of its own Motion on July 1, 2022. (Doc. No. 19.) Defendants filed a Reply in support of their Motion for Summary Judgment on July 8, 2022. (Doc. No. 20.)

## II. Legal Standard

"The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (citing 5 U.S.C. § 551(5)). Under the APA, "[a] person suffering legal

wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further empowers federal courts to set aside unlawful agency action, as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> ***
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > (B) contrary to constitutional right, power, privilege or immunity;
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law;
>
> ***

5 U.S.C. § 706(2). When a federal court is reviewing a final agency action, "the usual rules and standards governing summary judgment do not apply." *Integrity Gymnastics & Pure Power Cheerleading, LLC v. USCIS*, 131 F.Supp.3d 721, 725 (S.D. Ohio 2015). *See also Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999); *Oak Ridge Environmental Peace Alliance v. Perry*, 412 F.Supp.3d 786, 808 (E.D. Tenn. 2019). "[S]ummary judgment 'serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.'" *Singh v. Johnson*, 2016 WL 3476701 at *3 (E.D. Mich. June 27, 2016) (quoting *Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 187 F.

Supp. 3d 100, 106 (D.D.C. 2016)).  *See also, e.g., Oak Ridge Environmental Peace Alliance*, 412 F.Supp.3d at 809.

## III.  Analysis

As noted above, Defendants acknowledge both that *Mann Construction, supra* is controlling law within the Sixth Circuit and that the analysis in that case applies to Notice 2017-10.   The parties, therefore, agree that, under *Mann Construction*, this Court should "hold unlawful and set aside" Notice 2017-10 pursuant to APA § 706(2).  (Doc. No. 18-1 at p. 1.)  The parties strongly disagree, however, regarding the *scope* of relief for this APA violation, i.e., whether the Court is authorized to vacate Notice 2017-10 in whole or as to GBX only.  This is the sole remaining legal issue in this matter.

GBX asserts that Notice 2017-10 should be vacated in whole, i.e., set aside as to everyone and not as to GBX only.  (Doc. No. 17.)  In support of this argument, GBX cites authority for the proposition that, when a federal court determines that agency action is unlawful, "the ordinary result is that the [agency action is] vacated—not that [its] application to the individual petitioners is proscribed."  (Doc. No. 17-1 at pp. 1, 4) (quoting *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)).  GBX argues that this is because the "set aside" remedy of vacatur set forth in APA § 706(2) acts against the agency action itself—not the government actor.  (*Id*. at p. 6.)  Thus, according to GBX, "the result of APA vacatur is that the [agency] action is rendered null and void, for any purpose."  (*Id*.)  Citing cases from the D.C., Third, and Ninth Circuits (as well as numerous district court decisions), GBX maintains that its proposed remedy of vacatur in whole of Notice 2017-10 (i.e., "universal vacatur") is both consistent with "longstanding and widespread precedent" and supported by the language and structure of the APA itself.  (*Id.* at pp. 4-11.)

8

Defendants disagree "emphatically" with extending relief beyond GBX and "invalidat[ing] the Notice beyond the Sixth Circuit." (Doc. No. 18-1 at p. 1.) Defendants assert that the law regarding the scope of the "set aside" remedy in APA § 706(2) is, in fact, unsettled and "hotly contested among judges and scholars." (*Id*. at p. 5-6.) Defendants note that the Sixth Circuit has not expressly ruled on this issue but that at least one district court in this Circuit has rejected GBX's argument and declined to order universal relief under § 706(2). (*Id*. at p. 7) (citing *Skyworks Ltd v. Centers for Disease Control and Prevention*, 542 F.Supp.3d 719 (N.D. Ohio 2021)). Defendants further argue that GBX lacks standing to seek relief as to non-parties because its "injury is based on its own obligations and that injury is fully remedied by a judgment setting the Notice aside as to GBX only." (*Id*. at p. 12.) Defendants also assert that setting aside the Notice as to GBX only is "consistent with the traditional limits on the scope of equitable remedies." (*Id.* at pp. 12-16.) Lastly, Defendants maintain that § 706(2) is part of a waiver of sovereign immunity and, thus, should be narrowly construed in the Government's favor to restrict relief to GBX only. (*Id*. at pp. 16-18.)

As it implicates this Court's subject matter jurisdiction, the Court will begin by addressing Defendants' argument that GBX lacks standing to pursue its proposed remedy of universal vacatur. *See Kanuszewski v. Michigan Dep't of Health and Human Services*, 927 F.3d 396, 405 (6th Cir. 2019) ("Because standing doctrine comes from Article III's case-or-controversy requirement, it is jurisdictional and must be addressed as a threshold matter.") (citing *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017)).

### A. Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'" *Hein v. Freedom From Religion Found., Inc*., 551 U.S. 587, 597–

98 (2007) (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, (2006). The case-or-controversy requirement is satisfied only where a plaintiff has standing. *See Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id.* at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561(internal quotation marks and citation omitted). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' i.e., which 'affect[s] the plaintiff in a personal and individual way.'" *Gill v. Whitford*, 138 S.Ct. 1916, 1929 (2018) (quoting *Lujan*, 504 U.S. at 560, and n. 1).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Notably, a plaintiff must demonstrate standing separately "for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servcies, Inc.*, 528 U.S. 167, 185 (2000). *See Summers v. Earth Island Institute*, 555 U.S. 488,

493 (2009) (explaining that a plaintiff must demonstrate standing "for each type of relief sought."); *See also Kanuszewski*, 927 F.3d at 406; *Waskul v. Washtenaw County Community Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018).

Applying these principles to the instant case, Defendants argue that "the proper remedy is to set aside the Notice as to GBX, thus redressing GBX's own asserted injury based on its listed transaction obligations, but not as to any non-parties."  (Doc. No. 18-1 at p. 8.)  Defendants assert that standing to pursue universal vacatur is not demonstrated by virtue of the fact that GBX has agreed to prepare tax forms for other, non-party taxpayers that participate in GBX-promoted listed transactions.  (*Id.* at p. 9.)  Nor, Defendants argue, is standing conferred based on GBX's assertion that it is required by law to obtain and provide a reportable transaction number to all non-party taxpayers and material advisors involved in its transactions.[5]  (*Id.* at p. 10-11.)  Finally, Defendants maintain that, even if the Court were to accept that non-party participants in GBX-promoted transactions may suffer harm as a result of Notice 2017-10, this is nonetheless insufficient to demonstrate standing for GBX's proposed remedy of universal vacatur.  (*Id.*)  Defendants emphasize that, even in the APA context, GBX's remedy "must be tailored to redress the plaintiff's particular injury."  (*Id.* at p. 11.)  Because GBX's injury is "based on its own obligations, and that injury is fully remedied by a judgment setting the Notice aside as to GBX only," Defendants assert that GBX lacks standing to pursue any relief as to non-parties.  (*Id.* at p. 12.)

---

[5] Defendants maintain that this assertion is simply "false" because a taxpayer need only provide a reportable transaction number if he/she/it receives one.  (*Id.*) Thus, Defendants maintain that, if GBX is relieved from the requirements of Notice 2017-10, it will not be issued a reportable transaction number and, therefore, taxpayers that participate in GBX-promoted transactions will be under no obligation to report one.  (*Id.*)  GBX does not address this issue in its Reply Brief.  (Doc. No. 19.)

11

In response, GBX argues that standing is a "red herring." (Doc. No. 19 at p. 11.) GBX asserts that Defendants' argument that GBX lacks standing to seek relief as to non-parties "misses the mark" because, by its very nature, "[v]acatur of an agency rule *is not* 'relief as to non-parties' – it is relief that operates *in rem* on 'the challenged agency action itself.'" (*Id*.) (emphasis in original). GBX further notes that, for decades, Circuit Courts (including the Third, Ninth, and D.C. Circuits) have routinely set aside unlawful agency action in whole and as against the public at large, rather than as to specific plaintiffs only. (*Id*.) GBX asserts that it is "undisputedly injured by Notice 2017-10, and the vacatur of that notice thus presents an active cause or controversy within the meaning of Article III." (*Id*. at p. 12.)

For the following reasons, the Court finds that GBX has standing to pursue the relief it seeks under APA § 706(2). Although the parties disagree about a great many things, there is no dispute that GBX has standing to pursue its claim that Notice 2017-10 is unlawful under APA § 706. Specifically, Defendants do not dispute that GBX personally suffers from actual or threatened injury as a result of Defendants' failure to comply with the APA's notice and comment procedures in promulgating Notice 2017-10. Nor do Defendants dispute that GBX's injury is fairly traceable to Defendants' conduct or that GBX's injury is likely to be redressed by a favorable ruling. Thus, it is undisputed, as a general matter, that GBX has standing to ask the Court to "hold unlawful and set aside" Notice 2017-10 under APA § 706(2).

The parties' dispute centers around the nature and breadth of the relief to which GBX is entitled under § 706(2). This is an important legal issue, but the Court is not persuaded that it is a standing issue. *See, e.g., Salazar v. Buono*, 559 U.S. 700, 713 (2010) (plurality opinion) (stating that an argument about the scope of an injunction "is not an argument about standing but about the

merits.")  Rather, the Court finds that the question of whether GBX is entitled to an Order vacating Notice 2017-10 in whole is as an issue of statutory interpretation, i.e., whether, pursuant to § APA 706(2), Congress intended to authorize federal courts to order broad, universal relief that, by its very nature, incidentally benefits non-parties to the litigation.

Indeed, several district courts have expressly rejected the argument that a plaintiff lacks standing to seek a remedy under APA § 706(2) that benefits non-parties.  *See District of Columbia v. U.S. Department of Agriculture*, 444 F.Supp.3d 1, 54-56 (D.D.C. 2020) (in APA case, rejecting USDA's argument that, even if plaintiffs had standing to seek a remedy to address their injuries, the plaintiffs did not have standing to seek a remedy that benefits non-plaintiffs, and noting "just how commonplace relief affecting non-plaintiffs is.")  *See also Skyworks, Ltd v. CDC, et al*., 542 F.Supp.3d 719, 722 (N.D. Ohio 2021) (rejecting argument that plaintiff lacked standing to seek nationwide remedy under § 706(2)).  Moreover, it bears noting that, for over twenty years, numerous courts (including several Circuit Courts of Appeals) have vacated unlawful agency action in whole (and as against non-parties) under APA § 706(2), without raising any jurisdictional concerns relating to lack of standing to seek such relief.[6] *See, e.g., National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021); *Cook County, Illinois v. Wolf*, 498 F.Supp.3d 999 (N.D. Ill. 2020); *Kiakombua v. Wolf*, 498 F.Supp.3d 1 (D.D.C. 2020); *CIC Services, Inc. v. IRS*, 2022 WL 985619 (E.D. Tenn. March

---

[6] This is noteworthy because "[e]ach federal court is 'under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.'"  *W.O. v. Beshear*, 459 F.Supp.3d 833, 837 (E.D. Ky. 2020) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations and citation omitted).

21, 2022), *reconsideration granted in part on other grounds*, 2022 WL 2078036 (E.D. Tenn. June 2, 2022).

The cases cited by Defendants do not persuade the Court otherwise. Notably, the majority of the standing cases relied upon by the Defendants do not involve requests for vacatur of unlawful agency action under APA § 706(2) and, thus, do not consider or address the body of case law (cited above) finding that § 706(2) authorizes universal relief without raising any jurisdictional concerns about a plaintiff's standing to seek such broad relief. *See, e.g., Gill v. Whitford*, 138 S.Ct. 1916 (2018) (finding insufficient evidence that plaintiffs had standing to pursue claim under 42 U.S.C. § 1983 that a state legislative plan was unconstitutional partisan gerrymandering in violation of the Equal Protection Clause and the First Amendment); *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) (finding that certain plaintiffs lacked standing to seek damages against TransUnion for violations of the Fair Credit Reporting Act); *California v. Texas*, 141 S.Ct. 2104 (2021) (finding plaintiffs lacked standing to challenge statutory minimum essential coverage provision in Patient Protection and Affordable Care Act).

Citing *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), however, Defendants assert that the standing principles espoused in the above cases "remain relevant in the APA context." (Doc. No. 18-1 at pp. 11-12.) In *Summers*, the United States Forest Service ("USFS") promulgated certain regulations under the Forest Service Decisionmaking and Appeals Reform Act ("Appeals Reform Act") that exempted small fire-rehabilitation and timber sales projects from the notice, comment, and appeal process required under the Appeal Reform Act for larger projects. *Id.* at 490. Pursuant to these "exemption" regulations, the USFS issued a decision memo approving a salvage timber sale in the Sequoia National Forest ("the Burnt Ridge Project") without providing notice, a period of public

14

comment, or the opportunity to appeal.  *Id*. at 491.  Plaintiffs (a group of environmental organizations) filed suit, challenging the failure of the USFS to apply to the Burnt Ridge Project the regulations in the Appeal Reform Act that required prior notice and comment.  *Id.*  The plaintiffs also challenged six other USFS regulations implementing the Appeals Reform Act that were not applied to the Burnt Ridge Project.  *Id*.

The district court granted a preliminary injunction against the Burnt Ridge salvage timber sale.  *Id.*  Soon thereafter, the parties settled their dispute over the Burnt Ridge Project and the district court concluded that "the Burnt Ridge timber sale is not at issue in this case."  *Id*.  The government argued that, with the Burnt Ridge dispute settled, and with no other project before the court in which plaintiffs were threatened with injury, plaintiffs lacked standing to challenge the regulations.  *Id*. at 491-492.  The district court disagreed and reached the merits of plaintiffs' challenges.  *Id*.  The district court proceeded to invalidate five of the challenged regulations as contrary to the language and purpose of the Appeals Reform Act and entered a nationwide injunction against their application.  *Id*. at 492.  On appeal, the Ninth Circuit found that plaintiffs' challenges to regulations not at issue in the Burnt Ridge Project were not ripe for adjudication, but otherwise affirmed the district court's findings as to the regulations that had been applicable to the Burnt Ridge Project and upheld the nationwide injunction against their application. *Id*.

The Supreme Court reversed, finding that plaintiffs lacked organizational standing.  The Court first noted that "[t]he regulations under challenge here neither require nor forbid any action on the part of respondents," making standing "substantially more difficult to establish."  *Id*. at 493.   After explaining that, under certain circumstances, the plaintiffs could assert the standing of their members, the Court examined the evidence submitted by plaintiffs and found it lacking:

15

Affidavits submitted to the District Court alleged that organization member Ara Marderosian had repeatedly visited the Burnt Ridge site, that he had imminent plans to do so again, and that his interests in viewing the flora and fauna of the area would be harmed if the Burnt Ridge Project went forward without incorporation of the ideas he would have suggested if the Forest Service had provided him an opportunity to comment. The Government concedes this was sufficient to establish Article III standing with respect to Burnt Ridge. *** Marderosian's threatened injury with regard to that project was originally one of the bases for the present suit. After the District Court had issued a preliminary injunction, however, the parties settled their differences on that score. Marderosian's injury in fact with regard to that project has been remedied, and it is, as the District Court pronounced, "not at issue in this case." 376 F.Supp.2d, at 999. **We know of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action (here, the regulation in the abstract), apart from any concrete application that threatens imminent harm to his interests. Such a holding would fly in the face of Article III's injury-in-fact requirement.** *See Lyons, supra*, at 111, 103 S.Ct. 1660.

*Id*. at 493-494 (emphasis added).

The Court finds that *Summers* is distinguishable from the instant case. As an initial matter, *Summers* involved the issue of organizational (or "associational") standing, i.e., the standing of an organization to sue over injuries allegedly sustained by its members rather than by the organization itself. Here, by contrast, GBX sues on its own behalf, i.e., for injuries that it allegedly has sustained (or will sustain) as a result of Notice 2017-10. Moreover, unlike the regulations at issue in *Summers* which "neither require[d] or for[bade] any action on the part of" the plaintiffs, it is undisputed that Notice 2017-10 imposes significant record keeping and reporting requirements on GBX and carries with it the potential for penalties for non-compliance with those requirements. Thus, *Summers* did not expressly consider the issue of whether and to what extent, under the set aside provision in APA § 706(2), an individual plaintiff has standing to seek universal vacatur of unlawful agency action that imposes significant, affirmative burdens and responsibilities on that plaintiff itself.

16

The Court further finds that *Summers* is distinguishable on its facts. Unlike the parties in *Summers*, GBX and Defendants have not "settled their dispute." To the contrary, GBX's APA claim relating to Notice 2017-10 is still "an issue in the case" because the proper remedy accorded by § 706(2) to GBX for the IRS' unlawful agency action in promulgating that Notice has not yet been decided. Thus, GBX is not raising an "abstract challenge" to Notice 2017-10 -- it is asserting arguments regarding the nature of the relief Congress intended to afford under § 706(2) for the concrete harm suffered by GBX as a result of IRS's unlawful promulgation of that Notice. GBX's standing to challenge both the lawfulness of the Notice and the proper scope of relief accorded by § 706(2) for the IRS' failure to follow APA's notice and comment requirements relating to that Notice, then, is fundamentally different from plaintiffs' standing to challenge the regulations at issue in *Summers*.[7]

---

[7] Defendants also draw this Court's attention, summarily and in a string cite, to *Ass'n of American Physicians & Surgeons v United States Food & Drug Administration*, 13 F.4th 531 (6th Cir. 2021). In that case, a nonprofit physician association challenged an Emergency Use Authorization ("Authorization") issued by the FDA which permitted the use of hydroxychloroquine to treat COVID-19, but only as to hospitalized patients. Plaintiff alleged violations of the equal protection clause, First Amendment, and APA based on the Authorization's restrictions barring the use of this drug to treat non-hospitalized COVID-19 patients. The Sixth Circuit found that the plaintiff lacked associational standing to bring the action because it had failed to sufficiently allege any direct or indirect harm to any of its members that was fairly traceable to the Authorization itself. Prior to reaching this conclusion, the Sixth Circuit engaged in a lengthy discussion regarding its concerns that the doctrine of associational standing "is in tension with" recent Supreme Court cases holding that a valid Article III remedy "must operate with specific parties." *Id.* at 540. In particular, the court noted that an association's members are not "parties" and thus, "relief to these nonparties might … exceed constitutional bounds." *Id. See also id.* (noting that "some courts have used [associational] standing as a 'backdoor' way to grant a universal injunction and avoid the difficult task of crafting member-limited relief.") The Court finds *Ass'n of American Physicians & Surgeons* is distinguishable from the instant action. Here, the issue is GBX's individual standing to seek universal vacatur under the set aside provision in § 706(2) of the APA. The Sixth Circuit did not consider that particular issue in *Ass'n of American Physicians & Surgeons* and, thus, had no occasion to evaluate language and structure of the APA or the body of case law interpreting § 706(2) as authorizing courts to vacate unlawful agency action in whole. Moreover, like *Summers*, *Ass'n of American Physicians & Surgeons* is an organizational standing case—not a case involving an individual plaintiff's standing to seek broad relief for concrete harm that it itself has suffered as a result of unlawful agency action.

Here, it is undisputed that GBX has standing to ask this Court to "hold unlawful and set aside" Notice 2017-10 under APA § 706(2).  The question of how broadly the Notice should be set aside under this provision is not an issue of standing but, rather, an issue of statutory construction that requires this Court to determine what Congress meant when it authorized courts to "set aside" unlawful agency action under the statute.  As GBX itself has suffered an injury in fact fairly traceable to the IRS' promulgation of Notice 2017-10, it has standing to ask the Court to decide what relief Congress intended to authorize for this injury.   Accordingly, and for all the reasons set forth above, the Court rejects Defendants' argument that GBX lacks standing to pursue its request for universal vacatur under § 706(2).

**B.** **Scope of Relief Authorized by APA § 706(2)**

As noted above, GBX asserts that the Notice 2017-10 should be in vacated in whole (and not just as to GBX itself) because, by its very nature, the "set aside" remedy of vacatur set forth in APA § 706(2) acts against the agency action itself—not the government actor.  (Doc. No. 17-1 at p. 6.) GBX asserts that, under established case law from the Third, Ninth, and D.C Circuit Courts of Appeals, the "ordinary result" upon a finding of unlawful agency action is that the [agency action] itself is vacated—"not that [its] application to the individual petitioners is proscribed."[8]   (*Id*. at p. 4)

---

[8] In its briefing, GBX differentiates between the remedies of injunctions vs. vacatur and emphasizes that it is seeking the remedy of universal vacatur under APA § 706(2).  Indeed, GBX indicates that it would be satisfied with "with no injunction at all, so long as the rule is set aside completely, without any restriction to the parties.  (Doc. No. 19 at p. 1, fn. 1.)  In their Reply Brief, Defendants assert that GBX failed to mention (much less seek the remedy of) vacatur in the Verified Complaint and should not be permitted to "amend its Complaint to request 'vacatur' in lieu of an injunction" via its current briefing.  (Doc. No. 20 at p. 8.) The Court finds Defendants' argument to be without merit.  Although the Verified Complaint does not contain the word "vacatur," it clearly requests that the Court "set aside" Notice 2017-10 under APA § 706(2).   The Court finds that this is sufficient to plead the remedy of vacatur under that provision.  The Court further notes that, while GBX also seeks declaratory and injunctive relief, it has not sufficiently addressed either of these forms of relief in its Motion for Summary Judgment.  Indeed, in their briefing before this Court, neither party addresses either the Declaratory Judgment Act or the four factors applied in the Sixth Circuit relating to requests for permanent injunctive relief under Fed. R. Civ. P. 65.  Thus, the Court does not reach these issues herein.

18

(quoting *Nat'l Min. Ass'n*, 145 F.3d at 1409).  Defendants strongly disagree, arguing the law on this issue is, in fact, unsettled and "hotly contested."  (Doc. No. 18-1 at p. 5-6.)  Defendants emphasize, in particular, that the Sixth Circuit has not expressly ruled on this issue and that at least one district court in this Circuit has rejected GBX's argument and declined to order universal relief under § 706(2).  (*Id*.)

The Court begins, as it must, with the language of the statute itself.  Section 706(2) of the APA provides, in relevant part, that "[t]o the extent necessary to decision and when presented, the reviewing court shall . . . hold unlawful and set aside agency action" where, as here, that action exceeds the agency's statutory authority.  On its face, the statute does not explicitly state *as to whom* a federal court should set aside unlawful agency action under this provision.  Indeed, as another district court in this Circuit recently observed, "[w]ithout more, the statutory text directing a reviewing court to 'hold unlawful and set aside agency action' does not directly resolve the parties' disagreement over the scope of the remedy."  *Skyworks, Ltd*., 542 F.Supp.3d at 729.  *See also Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring opinion) (with regard to the issue of universal relief, noting that the "set aside" provision in APA § 706(2) "raises a question; it does not answer it.").

The Supreme Court has not yet directly answered the question of whether universal vacatur is authorized under § 706(2).  Several Circuit Courts of Appeal, however, have considered this very question and found that it does.  The most often cited case for this proposition is *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998).  In that case, the plaintiffs challenged a regulation providing that incidental fallback accompanying dredging operations is subject to the Clean Water Act's permitting provision for "discharge" of dredge or fill

material.  *Id*. at 1401.  The district court found that this regulation exceeded the scope of the Army

Corps of Engineers' regulatory authority and granted summary judgment for the plaintiffs.  *Id*.  The

district court also entered an injunction prohibiting the Corps and EPA from enforcing the regulation

anywhere in the United States.  *Id*.  On appeal, the government challenged (among other things) the

breadth of the injunction issued by the district court.  *Id*. at 1409.  The D.C. Circuit Court of Appeals

rejected the government's argument, explaining (in relevant part) as follows:

> We have made clear that **"[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed**." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C.Cir.1989).  Justice Blackmun made a similar observation in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), writing in dissent but apparently expressing the view of all nine Justices on this question:
>
>> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. **Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court**. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.
>
>> *Id*. at 913, 110 S.Ct. 3177 (Blackmun, J., dissenting) (citation omitted). *See also id*. at 890 n. 2, 110 S.Ct. 3177 (majority opinion) (noting that under APA, successful challenge by aggrieved individual can affect entire agency program).

*Id*. (emphasis added).  *See also United Steel v. Mine Safety & Health Admin.,* 925 F.3d 1279, 1287

(D.C. Cir. 2019) (noting that "[t]he ordinary practice is to vacate unlawful agency action").[9]

---

[9]  Importantly, the D.C. Circuit Court of Appeals has also held that "[a]n inadequately supported rule…need not **necessarily** be vacated." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n.*, 988 F.2d 146, 150 (D.C. Cir. 1993) (emphasis added).  Rather, "the decision to vacate depends on the seriousness of the order's deficiencies ... and the disruptive consequences of an interim change that may itself be changed." *Id*.

20

Other courts of appeals have reached the same conclusion.  For example, in *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962 (9th Cir. 2021), the Ninth Circuit recently noted that "Section 706(2) does not tell a circuit court to 'set aside' unlawful agency action only within the geographic boundaries of that circuit."  *Id*. at 987.  Rather, the court explained, "[v]acatur of an agency rule prevents its application to all those who would otherwise be subject to its operation." *Id.* at 987.  The Third Circuit Court of Appeals has likewise construed § 706(2) as authorizing vacatur of unlawful agency action as a whole, and not solely as to an individual party.  *See, e.g., Pennsylvania v. President United States*, 930 F.3d 543, 575 (3d Cir. 2019) ("[O]ur APA case law suggests that, at the merits stage, courts invalidate—without qualification—unlawful administrative rules as a matter of course, leaving their predecessors in place until the agencies can take further action.") *rev'd and remanded on other grounds by Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 567 U.S. ---, 140 S.Ct. 2367, 207 L.Ed.2d 819 (2020); *Comite' De Apoyo A Los Trabajadores Agricoloas v. Perez*, 774 F.3d 173, 191 (3rd Cir. 2014) (noting that: "Ordinarily, reviewing courts have applied [APA § 706(2)] by vacating invalid agency action and remanding the matter to the agency for further review.  Here it is particularly appropriate to remand the case with a vacatur because if we did not do so, we would leave in place a rule that is causing the very adverse effect that DOL is charged with preventing, and we would be 'legally sanction[ing] an agency's disregard of its statutory or regulatory mandate.'") (internal citations omitted).

In the wake of these decisions, numerous district courts have vacated unlawful action under APA § 706(2) in whole.  *See, e.g., Health Freedom Defense Fund, Inc. v. Biden,* ---- F.Supp.3d ----,

2022 WL 1134138 at * 20-22 (M.D. Fla. April 18, 2022) (noting that "the weight of authority and judicial practice instructs that vacatur is an appropriate remedy for an APA violation" and finding that "vacatur ordinarily applies to the rule generally, not to just the plaintiffs in a suit"); *Cook County, Illinois*, 498 F.Supp.3d at 1005 ("By the APA's plain terms, an agency rule found unlawful in whole is not 'set aside' just for certain plaintiffs or geographic areas; rather, the rule 'shall' be 'set aside,' period."); *Kiakombua*, 498 F.Supp.3d at 52 ("It suffices to note here that the argument that a court can only vacate the agency's unlawful conduct with respect to the particular plaintiffs who have filed the legal action that is before it has no grounding in the Article III doctrine or in any federal statute of which this Court is aware. *** Thus, where the legal claim at issue is the unlawfulness of an agency action of general applicability, it makes no sense whatsoever to insist that a district court limit its vacatur to address solely the impact of the unlawful agency action on the plaintiffs. In fact, doing so is tantamount to transforming a facial challenge to agency conduct into an as applied claim. It defies both law and logic."). *See also District of Columbia*, 444 F.Supp.3d at 47-55; *O.A. v. Trump*, 404 F.Supp.3d 109, 152- 154 (D.D.C. 2019).

The Sixth Circuit, however, has not yet explicitly decided whether a district court has the authority under § 706(2) to vacate unlawful agency action in whole and not just as to a specific plaintiff.[10]  *See Skyworks, Ltd*., 542 F.Supp.3d at 734 ("Unlike the Ninth and D.C. Circuits, the Sixth

---

[10] Plaintiff argues that the Sixth Circuit's decision in *Mann Construction* should be construed as holding that § 706(2) authorizes universal vacatur because the court in that case simply held that IRS Notice 2007-83 should be set aside and did not indicate that the resulting vacatur would be limited to the taxpayers who brought suit.  (Doc. No. 17-1 at p. 9.) The Court disagrees.  Although the Sixth Circuit held that Notice 2007-83 must be set aside, it did not address (one way or another) whether the Notice was set aside universally or as to the plaintiff only.  Indeed, the parties in *Mann Construction* are currently disputing this very issue in the district court.  After the Sixth Circuit's decision, plaintiff Mann Construction filed a "Motion to Enforce the Mandate of the Sixth Circuit Court of Appeals" in the district court, in which it argues that Notice 2007-83 should be set aside "everywhere and as to everyone."  *See Mann Construction, Inc. v. United State*s, Case No. 1:20cv11307 (E.D. Mich.) (Doc. No. 53 at p. 6).  The United States has opposed Mann Construction's motion, arguing that the Sixth Circuit meant that Notice 2007-83 must be set aside as to Mann Construction only.  *Id*.

Circuit is not among those that have adopted a rule like *National Mining* or otherwise provided a precedential interpretation of Section 706.")  At least one member of the Sixth Circuit has expressed significant reservations about construing APA § 706(2) to authorize such universal relief.  *See Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) (Sutton, C.J., concurring) (noting that: "Use of the 'setting aside' language [in § 706(2)] does not seem to tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants. Observe as well that the statute does not say against whom an unlawful agency action must be 'set aside.' In the context of a law authorizing identifiable "person[s]" "aggrieved by agency action" to seek judicial review, 5 U.S.C. § 702, we should not lightly conclude that a court is entitled to 'set aside' agency action against persons not privy to the case before it. For that reason, I would be inclined to stand by the long-understood view of equity—that courts issue judgments that bind the parties in each case over whom they have personal jurisdiction.")

District courts in this Circuit are divided.  In *Skyworks*, for example, another judge in this District recently declined a plaintiff's request for universal relief under § 706(2).  In that case, the court had previously found that orders issued by the CDC implementing a nationwide eviction moratorium exceeded the agency's statutory authority and were, therefore, invalid. *Skyworks*, 542 F.Supp.3d at 721.  Thereafter, Skyworks moved to clarify the scope of the court's judgment, seeking a ruling on whether the court's judgment bound only the parties to the action or applied more broadly "and, if so, how far."  *Id*. at 722.  Noting that "this dispute implicates complex legal issues and doctrines about which much remain unsettled and the subject of debate," the district court canvassed

---

(Doc. No. 59 at p. 10-11.)  As of the date of this Opinion, the district court has not yet ruled on Mann Construction's motion.

the law regarding declaratory judgments and the APA, including APA § 706(2).  *Id.* at 723-734.  The

court acknowledged that there were compelling arguments on each side of the dispute:

> On the one hand, reading [APA § 706(2)] as extending a remedy to all persons, even
> those who are not parties, where, as here, an agency exceeds congressional
> authorization offers an elegantly simple solution to a thorny problem. If an agency
> exceeds it authority, its action is unlawful regardless of which parties are formally
> before the court. Indeed, the CDC's action applies nationwide, as does Section 361 of
> the Public Health Service Act.  As one district court noted: "the Court cannot, in an
> intellectually honest manner, limit vacatur of the rules to the state of New Mexico.
> The Court does not know how a court vacates a rule only as to one state, one district,
> or one party." *New Mexico Health Connections v. United States Dep't of Health &*
> *Hum. Servs.*, 340 F. Supp. 3d 1112, 1183 (D.N.M. 2018).  If an order of this type does
> not merit nationwide vacatur, it is difficult to conceive of one that does.
>
> ***
>
> On the other hand, the lack of a firm foundation for nationwide vacatur in the
> language, structure, and history of the Administrative Procedure Act is striking.  Some
> textual clues suggest that judicial review of agency action is more circumscribed,
> consistent with the aim of leaving the agency as the central actor when crafting
> administrative policy.  *See, e.g.*, 5 U.S.C. §§ 551(11) & 702.  Such a reading leaves
> the agency at the center of policymaking, consistent with fundamental principles of
> administrative law.  Further, the principle of standing at the heart of Article III and its
> discussion in *Lujan*, among other cases, serves as a reminder that the judicial power
> remains fundamentally limited, with few, circumscribed exceptions, to cases and
> controversies between particular litigants. In this way, Article III promotes the
> separation of powers by limiting the exercise of the judicial power so that the federal
> courts do not become a super-legislature (or, in this case, a super-agency).  Further,
> the recent increase in the use of nationwide or universal remedies suggests a break
> from historical practices and understandings about the proper role of the judiciary. In
> an understandable sense, the increasingly expansive actions agencies themselves
> undertake prompt such judicial remedies in response. But two constitutional wrongs
> do not make a right.

*Id.* at 735.  Ultimately, the court was unpersuaded that § 706(2) authorized the broad relief requested

by Skyworks:

> Based on the lack of clear answer in the language, structure, and history of the
> Administrative Procedure Act and the absence of clear precedent, the Court is not
> prepared to extend the remedy as far as Plaintiffs request. They may well be correct
> that the Act and Article III permit or even require such a result. If so, reaching that

conclusion will require greater analysis of the judicial power under Article III, which the parties have not fully developed. That task also more properly falls to the Sixth Circuit or the Supreme Court. *See* 28 U.S.C. § 2112(a)(3) (creating a procedure to consolidate multiple petitions for review in appellate courts, suggesting a broader remedial scope for circuits and implying a more limited role for district courts). And given the state of the law, one can only hope that Congress and the Supreme Court will provide some much-needed clarity and guidance.

*Id*. at 735-736.

Conversely, the district court in *CIC Services, LLC v. IRS*, ---- F.Supp.3d ----, 2022 WL 985619 (E.D. Tenn. March 21, 2022) granted plaintiff's request to vacate an IRS Notice "in its entirety" under APA § 706(2). In that case, the plaintiff CIC Services, LLC ("CIC") challenged IRS Notice 2016-66, which classified certain "micro-captive transactions" as "transactions of interest" and imposed reporting requirements on material advisors and taxpayers. *Id*. at * 1-2. CIC argued that Notice 2016-66 violated the APA because it was arbitrary and capricious and, further, because the IRS failed to follow notice and comment procedures. *Id* at *2. The district court considered these issues on the merits and agreed with CIC. *Id*. at * 3-6.

CIC then requested that the district court (among other things) (1) enter a judgment declaring the Notice unlawful and setting it aside; and (2) enjoin all agencies from enforcing the Notice. *Id*. at *7. The IRS argued that the court need not set aside the Notice and, instead, should remand the rule to the IRS and leave in place the rule pending promulgation of a new or amended rule. *Id.* Alternatively, the IRS argued that the court should limit vacatur of the Notice to CIC and should not grant any of CIC's requested injunctive relief. *Id.*

Again, the district court agreed with CIC, finding that the Notice must be set aside in its entirety. The district court explained as follows:

The text of the APA provides that the reviewing court "shall ... **hold unlawful and set aside agency** action, findings, and conclusions found to be ... arbitrary, capricious,

25

and abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (emphasis added). Consistent with the text of the APA, in *Mann Construction*, the Sixth Circuit expressly stated that, "[b]ecause the IRS's process for issuing Notice 2007-83 did not satisfy the notice-and-comment procedures for promulgating legislative rules under the APA, **we must set it aside**." 27 F.4th at 1143 (emphasis added). The United States Court of Appeals for the District of Columbia, however, has held that "[a]n inadequately supported rule, however, need not necessarily be vacated," and "the decision to vacate depends on the seriousness of the order's deficiencies ... and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n.*, 988 F.2d 146, 150 (D.C. Cir. 1993).

In this case, vacating the Notice in its entirety is appropriate. The IRS did not comply with notice-and-comment procedures, and it acted arbitrarily and capriciously. While it may be able to rectify these deficiencies if it pursues promulgating a new rule, nothing about its actions supports leaving the Notice in place while it takes the actions necessary to comply with the APA or vacating the Notice as to CIC only, especially given the Sixth Circuit's prior observations that the IRS "does not have a great history of complying with APA procedures," *CIC Servs., LLC v. I.R.S.*, 925 F.3d 247, 258 (6th Cir. 2019), and that it does not follow the basic rules of administrative law, *CIC Servs., LLC v. I.R.S*, 936 F.3d 501, 507 (6th Cir. 2019).

*Id.* at *7 (emphasis in original) (footnotes omitted).

It is not clear to this Court whether the Sixth Circuit would agree with the Third, Ninth, and D.C. Circuits that universal vacatur is authorized under APA § 706(2).[11] This Court, however, need not decide this thorny legal question. Even assuming *arguendo* that federal courts have the authority to order universal vacatur under § 706(2), the Court is not convinced that it is *required* to order such relief under that statute.[12] And, for the reasons discussed in more detail below, the Court is not

---

[11] As noted above, the Sixth Circuit has not explicitly decided this issue, either in *Mann Construction, supra* or elsewhere. Indeed, the Court notes that, while other Circuit Courts of Appeals have found that universal vacatur is the "ordinary remedy," the Sixth Circuit has (without expressly analyzing the issue) ordered relief in cases challenging unlawful agency action as to the plaintiffs only, as opposed to extending that relief to non-parties. *See, e.g., Tennessee Hospital Ass'n v. Azar*, 908 F.3d 1029 (6th Cir. 2018) (finding that Medicare rule was invalid under the APA because it was improperly promulgated without notice and comment and stating that the permanent injunction against application of rule applied to the plaintiffs only.)

[12] The Court recognizes that, in *Cook County, Illinois v. Wolf*, 498 F.Supp.3d 999 (N.D. Illinois 2020), the district court concluded that § 706(2) requires federal courts to set aside unlawful agency action in whole. *Id.* at 1005. The *Cook*

persuaded that the broad, universal relief requested by GBX herein is appropriate or necessary under the circumstances presented.

Vacatur is an equitable remedy and the decision whether to grant vacatur is entrusted to the district court's discretion. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (finding that "[u]ndeniably, vacatur is 'equitable relief'" and "[t]he decision whether to vacate agency action falls within our broad equitable discretion"). Further, "the federal courts possess broad discretion to fashion an equitable remedy." *Id*. at 1290. *See also East Bay Sanctuary Covenant v. Biden,* 993 F.3d 640, 680 (9th Cir. 2021) (noting that district courts have "considerable discretion" in crafting suitable equitable relief.); *Kiakombua*, 498 F.Supp.3d at 50 ("'It is blackletter law that vacatur is a form of equitable relief that the Court may award, withhold, and craft to fit the circumstances of the case before it.'") (quoting *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013)). A court's equitable discretion is necessarily limited by what a court "deem[s] necessary and appropriate" in a particular case. *Ackerman Bros v. U.S. Department of Agriculture*, 2021 WL 6133910 at * 3 (E.D. Mich. Dec. 29, 2021) (quoting *Carter-Jones Lumber Co. v. Dixie Distrib. Co*., 166 F.3d 840, 846 (6th Cir. 1999)).

Thus, while the Court agrees with the parties that Notice 2017-10 is unlawful under *Mann Construction, supra* and should be "set aside" under § 706(2), it is within this Court's discretion to craft an order of vacatur that "fits the circumstances of the" instant case. *Kiakombua*, 498 F.Supp.3d

---

County, Illinois* decision is not binding on this Court. Moreover, the Court does not agree that the language of § 706(2) mandates that unlawful agency action be set aside in whole. As discussed above, § 706(2) does not explicitly state as to whom a federal court should set aside unlawful agency action; rather the statute is silent as to this crucial question. Moreover, even the D.C. Circuit (upon whose decisions GBX heavily relies) has recognized that unlawful agency action "need not necessarily be vacated" under § 706(2). *Allied Signal, Inc. v. NRC*, 988 F.2d 146, 150 (D.C. Cir. 1993). *See also Humane Society of the United States v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017).

at 50. After careful review, and for the following reasons, the Court declines, in the exercise of its equitable discretion, to set aside Notice 2017-10 in whole.

Although the Sixth Circuit found in *Mann Construction, supra* that an analogous IRS Notice is invalid because the IRS failed to satisfy the notice-and-comment procedures under the APA, Defendants strongly contest this ruling and plan to dispute it in other jurisdictions. (Doc. No. 18-1 at pp. 18-19.) Indeed, the United States is currently defending a case in the Northern District of Alabama in which the plaintiff argues that Notice 2017-10 (the very Notice at issue herein) is unlawful based, in part, on *Mann Construction*. *See Green Rock LLC v. IRS*, Case No. 2:21cv1320 (N.D. Ala.) (Doc. No. 22). In that case, the United States has filed a dispositive motion, asserting that *Mann Construction* was wrongly decided and should not be controlling outside the Sixth Circuit. (*Id.* at Doc. No. 31.) This Court agrees with Defendants that, if this Court were to issue an Order setting aside Notice 2017-10 in whole, such an Order could potentially hamper the ability of other federal courts across the country (including the Northern District of Alabama) to reach these important issues. [13]

As courts have noted, "there is a value in having legal issues 'percolate' in the lower courts." *Gun Owners of America, Inc. v. Garland*, 992 F.3d 446, 474 (6th Cir. 2021), *vacated on other grounds*, 19 F.4th 890 (6th Cir. 2021) (*en banc*). *See also Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("By design, the federal court system allows courts to reach

---

[13] The Court notes that the United States Tax Court recently agreed with the Sixth Circuit's decision in *Mann Construction* and held that Notice 2017-10 is a legislative rule that was improperly issued by the IRS without notice and comment as required by the APA. *See Green Valley Investors LLC v. Branch*, 2022 WL 16834499 (U.S. Tax. Ct. Nov. 9, 2022). The Tax Court noted that "[a]lthough this decision and subsequent order are applicable only to petitioner, the Court intends to apply this decision setting aside Notice 2017-10 to the benefit of all similarly situated taxpayers who come before us." *Id*. at fn 22.

multiple answers to the same legal question, but nationwide injunctions frustrate that end. There are 94 federal district courts around the country and 12 regional circuit courts of appeals. *** Conflicts are inevitable, and even helpful. Differing opinions aid 'the development of important questions of law' and supply the Supreme Court with 'the benefit it receives from permitting several courts of appeals to explore a difficult question' before it grants certiorari.") (quoting *United States v. Mendoza*, 464 U.S. 154, 160 (1984)); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) ("The Supreme Court has also suggested that nationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals.") (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) and *Mendoza*, 464 U.S. at 160)).

Ordering universal relief in the instant action (whether it be "vacatur in whole" or a nationwide injunction)[14] would inhibit the ability of other federal courts to address the validity of Notice 2017-10 and, as a result, hamper the development of legal issues relating to that Notice "in different factual contexts and in multiple decisions" by various district courts and circuit courts of appeals. The Court declines to take this path and finds that continued litigation over the lawfulness of the IRS Notice at issue promotes respect for our fellow federal courts and the healthy development of the law. *See, e.g., New York v. United States Department of Homeland Security*, 969 F.3d 42, 88 (2nd Cir. 2020) ("The issuance of unqualified nationwide injunctions is a less desirable practice

---

[14] GBX argues, extensively, that vacatur and injunctive relief are "fundamentally different remedies" and, therefore, case law disfavoring nationwide injunctions is inapplicable to the instant case. (Doc. No. 17-1 at pp. 10-11; Doc. No. 19 at pp. 4-8.) The Court finds that, in this particular case, the practical result of universal vacatur and a nationwide injunction are sufficiently similar, such that the Court may consider case law discussing the negative effect of nationwide injunctive relief on the development of the law in determining an appropriate equitable remedy herein.

where, as here, numerous challenges to the same agency action are being litigated simultaneously in district and circuit courts across the country.  It is not clear to us that, where contrary views could be or have been taken by courts of parallel or superior authority, entitled to determine the law within their own geographical jurisdictions, the court that imposes the most sweeping injunction should control the nationwide legal landscape.")

GBX argues, however, that setting aside Notice 2017-10 as to GBX only is "unworkable" because, as a material advisor, GBX is required to file a Form 8918 with the IRS and obtain a reportable transaction number, which GBX is then allegedly required to provide to "all taxpayers and other material advisors" involved in its transactions.  (Doc. No. 17-1 at pp. 3, 12.)  GBX asserts that, if it is no longer required to request or receive reportable transaction numbers, each of these other participants in GBX transactions would be without the necessary information to comply with Notice 2017-10 and would be subject to civil penalties.  (*Id*.)  Thus, "[w]hile an order setting aside Notice 2017-10 as to GBX would technically relieve GBX of its own filing obligation, that technical relief would be meaningless because GBX would still need to comply in order to provide the reportable transaction number to the investors and other advisors."  (*Id*.)

Defendants assert that GBX's argument "is false," explaining as follows:

To the extent GBX already filed Form 8918 with respect to certain transactions, it has received reportable transaction numbers for those transactions and can provide them to participants and other material advisors (if not done already). Regardless, the requirement for GBX to provide the number arises in 26 C.F.R. § 301.6111-3(d)(2), which says the IRS will issue to the material advisor a number, and the material advisor must provide the number to all taxpayers and other material advisors for whom the material advisor (here, GBX) acts as a material advisor. However, the IRS will not issue GBX a number if GBX does not file a Form 8918, and there would thus be no reportable transaction number to provide. With respect to participants, § 1.6011-4(d) states, "[i]f a taxpayer receives one or more reportable transaction numbers for a reportable transaction, the taxpayer must include the reportable transaction number(s) on the Form 8886 (or a successor form)." By its terms, then, the requirement only

applies "if" a number is received. A taxpayer who does not receive a reportable transaction number—as GBX claims would be the case for participants in its transactions when GBX no longer files Form 8918—is under no obligation to report one.

(Doc. No. 18-1 at pp. 10-11) (footnote omitted).

Although GBX subsequently filed a Reply Brief, it did not address Defendants' response on this issue. (Doc. No. 19.) The Court therefore finds that GBX abandoned this argument. Thus, and in the absence of any meaningful response, the Court rejects GBX's assertion that vacating Notice 2017-10 as to GBX only is "unworkable" due to the regulatory requirements relating to the provision of reportable transaction numbers.

In sum, GBX has not provided any compelling reason why universal vacatur is necessary to afford it complete relief. While GBX suggested during a status conference with this Court that universal vacatur is necessary because participants in GBX-promoted transactions are located outside the Sixth Circuit (and, thus, not provided a safe harbor by *Mann Construction*), GBX failed to raise this argument in its summary judgment briefing. Nor has GBX otherwise directed this Court's attention to any evidence regarding the identity and/or geographical location of participants in its transactions from which this Court could potentially reach this conclusion. Thus, GBX has failed to show that setting aside Notice 2017-10 in whole (and as to non-parties outside either this District or the Sixth Circuit) is necessary to afford it complete relief or is otherwise appropriate under the circumstances.

Accordingly, and in light of the countervailing considerations discussed above, the Court will exercise its discretion to hold unlawful and set aside Notice 2017-10 as to GBX only.[15]

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED. Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED, as set forth herein. The Court declares that Notice 2017-10 is unlawful and hereby sets that Notice aside as to Plaintiff GBX Associates, LLC only.

**IT IS SO ORDERED.**


*s/Pamela A. Barker*
PAMELA A. BARKER
Date: November 14, 2022                    U. S. DISTRICT JUDGE

---

[15] Because the Court reaches this conclusion, it need not reach Defendants' argument that Section 706(2)'s instruction to "set aside" is part of a waiver of sovereign immunity that must be strictly construed in the Government's favor. (Doc. No. 18-1 at pp. 16-18.)

32